M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JERRY B. FRANKLIN, JR.,<br><br>    Defendant. | Case No. 3:06-cr-0008-JWS<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |

**I.    Facts**

On August 28, 2005, at approximately 9:50 a.m., Jerry Franklin was driving a late model maroon BMW near the intersection of Spenard Road and Minnesota Boulevard.  Anchorage Police Office Haas was patrolling the area and noticed the BMW.  The BMW was of particular interest to Haas as he had an upcoming traffic case involving a similar make and model.  Haas decided to "run" the license plate on the vehicle.  The APSIN report showed that the license plate belonged to a 1989 Dodge Caravan.  Haas decided to conduct a traffic stop on the BMW.  He pulled behind the vehicle and activated his overhead lights.

Mr. Franklin immediately pulled over, made contact with the officer, and produced his driver's license. Haas requested that Mr. Franklin provide him with the vehicle registration and proof of insurance. Mr. Franklin responded by informing the officer that the vehicle belonged to a friend, Kendall Reed, and that he did not have the registration nor proof of insurance.

Haas issued Mr. Franklin a citation for Expired Registration and Misuse of Plates. He also issued Mr. Franklin a summons to appear in court for Driving Without Insurance. Haas told Mr. Franklin that he was not under arrest and that he was free to go; however, Haas explained that he was going to impound the vehicle and called for a tow truck. As Mr. Franklin began to walk south on Minnesota, the tow truck arrived.

Once the tow truck was on scene, Haas began to search the vehicle. As he looked into the front passenger compartment, he observed a basket covered by a blanket. He removed the blanket and looked inside the basket. In the basket, he saw a clear, square glass, baking dish. The dish had white residue in the corners. Also present was a white box. Haas opened the box and discovered that it contained empty glass vials. At this point, Haas looked to see if Mr. Franklin was still on the scene. He did not see him. Assuming that he was no longer in the area, Haas proceed to open a closed backpack that was sitting on the front passenger seat. Inside the backpack, Haas found a clear glass jar with a substance he suspected to be methamphetamine. He also found a Gatorade bottle which had been taped closed and several jars. He suspected that the items were associated with the manufacturing of methamphetamine. Based on his observations, Haas suspended his search of the vehicle and decided to apply for a search warrant. Meanwhile, the vehicle was towed to APD outdoor storage.

Based on the items found in the backpack, Haas obtained state search warrant 3ANS-05-855 SW. Upon the execution of the warrant, items consistent with the manufacturing of methamphetamine were found in the trunk of the vehicle. The evidence found in the vehicle led to Mr. Franklin's current charges.

## II. Argument

### A. Government's Burden to Show That Search Falls Within Exception to Warrant Requirement

A warrantless search is "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). The government bears the burden of showing that a warrantless search was valid because it falls within one of the exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The government must prove the existence of an exception to the Fourth Amendment warrant requirement by a preponderance of the evidence. United States v. Vasey, 834 F.2d 782, 785 (9th Cir. 1987).

The discovery in this case suggests that the government will rely on the "inventory search" exception to the warrant requirement. However, the burden is on the government to show that the officer was indeed preforming an inventory search. "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches would be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" Florida v. Wells, 495 U.S. 1 (1990), quoting Colorado v.

Bertine, 479 U.S. 367 (1987) at 743 (Blackmum, J., concurring). Here, the government has produced no evidence that an inventory was actually done. The government bears the burden. If the government fails to establish that Haas was in the process of a legitimate inventory of the impounded vehicle, the evidence must be suppressed.

    **B.**    **Items Seized From the Warrantless Search of the White Box and the Backpack Must Be Suppressed**

The discovery provided by the government indicates that no search warrant was obtained prior to the search of the white box and backpack located in Mr. Franklin's vehicle. Therefore, the search of these items is presumptively unreasonable. The government bears the burden of proving that this search was justified under one of the limited exceptions to the Fourth Amendment.

In this case, the police have characterized the initial search of Mr. Franklin's vehicle as an "inventory" search. The boundaries of a permissible inventory search have been set by several decisions of the Supreme Court. South Dakota v. Opperman, 428 U.S. 364; Colorado v. Bertine, 479 U.S. 367 (1987); Florida v. Wells, 495 U.S. 1 (1990). The reasons for conducting the inventory search are threefold: (1) the protection of the vehicle owner's property; (2) the protection of police against claims by the owner; and (3) the protection of the police from potential danger. Id. However, in order to ensure that the inventory search is "limited in scope to the extent necessary to carry out the caretaking function," it must be carried out in accordance with the standard procedure of the local police department. Opperman at 375. The inventory search exception does not provide a "general license for the police to examine all the contents" of an automobile during an inventory search. Id. at 3102-03 (Powell, J., concurring). Also see Florida v. Wells, 495

U.S. 1 (1990) (holding that the search of defendant's suitcase, absent a policy with respect to the opening of closed containers, "was not sufficiently regulated to satisfy the Fourth Amendment.")

In State v. Daniel, 589 P.2d 408, 417-18 (Alaska 1979), the Alaska Supreme Court recognized a police inventory search as a valid exception to the general requirement that police can search only under the authority of a warrant. The court stated:

> Given this valid policy reason for inventory searches, we hold that in conjunction with impounding a vehicle, the police, as a matter of routine inventory procedure, are entitled to catalog all articles which are not in closed or sealed containers, luggage, briefcases, and packages.
>
> . . . [A] warrantless inventory search of closed, locked or sealed luggage, containers or packages contained within a vehicle is unreasonable and thus an unconstitutional search.

Id. at 417-18; also see D'Antorio v. State, 926 P.2d 1158 (Alaska 1996) (warrantless inventory search of closed, locked or sealed luggage, containers or packages contained within vehicle is unreasonable).

Mr. Franklin submits that under standards set forth under Alaska law, the search of the white box and the closed backpack violated his Fourth Amendment rights. As a result, the evidence seized from the search must be suppressed.

### C.   Items Seized Pursuant to the Warrant Must Also Be Suppressed

Evidence obtained in violation of the Fourth Amendment cannot be introduced in trial in federal court. Weeks v. United States, 232 U.S. 383 (1914). If an initial search was illegal, not only is any evidence obtained thereby inadmissible, but any evidence discovered as the result or exploitation of that primary taint is inadmissible as well, as a "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963).

Mr. Franklin submits that since the initial police search violated his Fourth Amendment rights, all the evidence against him is tainted and must be excluded.  "[E]vidence which is obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." United States v. Barajas-Avalos, 359 F.3d 1204, 1212 (9th Cir. 2004) (rev'd on other grounds), quoting United States v. Wanless, 882 F.2d 1459, 1465 (9th Cir. 1989) (citations omitted).  When an affidavit contains evidence illegally obtained, "[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate probable cause to issue a warrant."  United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987) (citation omitted).

> The warrant in this case was based on the following factors:
>
> - Haas had an upcoming court case involving a similar looking, older, maroon BMW.  The defendant in that case was on probation for misconduct involving a controlled substance.
>
> - Mr. Franklin told Haas that the BMW belonged to Kendall Reed.  Haas was aware that Mr. Reed was arrested in 2001 for distribution of methamphetamine.
>
> - Haas found a clear glass dish that had white residue in the corners in the BMW.
>
> - Haas found a white box containing two empty glass vials in the BMW.
>
> - Haas found what appeared to be processed methamphetamine and items that he suspected to be used in the manufacturing of methamphetamine in the closed backpack in the BMW.

(Attachment A, Search Warrant 05-855).

At the very least,[1] the court must excise the items found in the white box and the backpack. Absent these items, the only information Haas had was that the BMW was owned by Kendall (who had a four year old conviction for methamphetamine) and an ordinary kitchen dish with unknown white residue – clearly not enough evidence to rise to the level of probable cause to search the BMW. Thus, the evidence obtained during the subsequent warranted search should be suppressed.

**III.    Conclusion**

Mr. Franklin respectfully requests that all of the evidence illegally seized from his vehicle be suppressed unless the government is able to meet its burden by showing that a valid warrantless search exception exists and that the search of the closed containers in the vehicle was in compliance with the current Anchorage Police Department regulation governing inventory searches. Should the government choose to attempt to meet that burden by producing evidence that such an exception exists, Mr. Franklin requests an evidentiary hearing so that the nature of the government's evidence may be fully explored and its witnesses subjected to cross-examination. As previously stated, undersigned counsel is unavailable from March 20, 2006, through March 25, 2006.

---

[1] Mr. Franklin maintains that it is the government's burden to demonstrate that the search of the vehicle falls into a valid exception to the Fourth Amendment warrant requirement. If the government fails to met this burden, then all items, including the glass dish, must be excised.

DATED this 14th day of March, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Georgia Bar No. 316531
550 West 7th Avenue, Suite 1600
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mj_haden@fd.org

Certification:

I certify that on March 14, 2006, a copy of the foregoing document, with attachments, was served electronically on:

James N. Barkeley, Esq.

/s/ M. J. Haden