DEBORAH M. SMITH
Acting United States Attorney

STEPHAN A. COLLINS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: stephan.collins@usdoj.gov
AK # 8911061

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-00008 (JWS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPPOSITION TO MOTION TO |
| vs. | ) | SUPPRESS EVIDENCE |
| | ) | |
| JERRY B. FRANKLIN, Jr. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Jerry B. Franklin, Jr., the defendant has moved to suppress the evidence

seized from the interior of a maroon 1981 BMW that Franklin was driving on

August 26, 2005 after the Anchorage Police Department impounded the vehicle,

but which vehicle Franklin did not own.  Franklin argues the seizure of drug

related items from the interior of the vehicle violated the Fourth Amendment because the initial discovery of some of the incriminating evidence was done without a warrant, and this initial warrant less search tainted the evidence obtained as a result of search warrant the state of Alaska issued for the vehicle. Franklin submits that if the court were to excise the tainted information contained in the search warrant, the remainder of the information contained in the application fails to state sufficient probable cause to sustain the search warrant. Franklin does not appear to otherwise challenge the sufficiency of the search warrant application.

The United States opposes the motion. First, Franklin has failed to establish he had a legitimate expectation of privacy in either the vehicle or in any of the items found within it, thereby triggering *his* Fourth Amendment interest. Second, following the lawful impoundment of the vehicle, the searching officer conducted a legitimate inventory search, during which the officer found items that in his experience were consistent with illegal drug activity. This initial inventory search did not taint the subsequently obtained search warrant. Because Franklin does not otherwise appear to challenge the sufficiency of the warrant with the disputed information, the United States will present no argument other than to submit that under the totality of the circumstances described within the four corners of the search warrant application sets forth sufficient facts that would lead a reasonable

and prudent person to conclude that there was a substantial likelihood there would be evidence of a crime in the vehicle. Because the warrant did not facially lack any indicia of reliability, the officers who executed therefore relied upon its issuance in good faith. *United States v. Leon*, 468 U.S. 897 (1984).

## FACTS

It appears the parties have no dispute about the facts surrounding the initial search at issue in this matter. The United States will briefly set forth those facts it anticipates it will present at the evidentiary hearing the court has scheduled in this matter.

On August 26, 2005, Anchorage Police Department Patrol Officer Steve Haas saw an older maroon BMW with Alaska license plate CSB804. This vehicle piqued Haas' attention because he had recently cited a similar looking BMW for not having a license plate. When Haas ran a check on the license plate CSB804, he learned that it had been assigned to a 1989 red Dodge Caravan. Because the license plate on the BMW did not match the description of the Dodge, Haas stopped the BMW.

Franklin had been driving the BMW; he was the sole occupant. After Franklin stopped the BMW, he got out and started to approach Haas, who was parked behind him. Haas instructed Franklin to go back into the BMW, which

Franklin. When Haas went to the driver's side of the BMW, he asked Franklin for his Alaska driver's license, registration for the BMW, and proof of insurance coverage for the BMW. Franklin only produced his driver's license. He told Haas that the vehicle did not belong to him, that it belonged to a "Kendall Reed", that he had borrowed it to run some errands, and that he did not have insurance for the BMW and did not know if Reed had any insurance for it.

When Haas returned to his cruiser, he ran the vehicle identification number of the BMW. He learned that it had been originally register to a Lawrence and Jeanette Dinneon and that the registration had expired in November 2003. During this time and while Haas was preparing to cite Franklin for misuse of the license plate and expired registration, Franklin remained seated in the BMW. Because of the false license plate on th BMW and there was no insurance coverage for it, the BMW was subject to impoundment for violations of Anchorage Municipal Code sections 09.52.010 and 09.28.030 B.3.

When Haas informed Franklin that he was going to impound the BMW, Haas told Franklin that he should remove anything of value from the BMW. Franklin then took a car stereo from the back of the BMW and placed it into a day pack that was on the front seat, but he did not remove it from the BMW. After the tow truck arrived to take the BMW away, Haas again informed Franklin that he

should take with him anything of value still in the car.  Again, Franklin took nothing from the BMW.

     Before allowing the tow truck to take the BMW away, Haas conducted an inventory search of the BMW for anything of obvious value, per Anchorage Police Department policy.  During this time, Franklin was milling around the parking lot in which he had parked BMW, talking on his cell phone but did not otherwise appear to be interested in what Haas was doing.  Haas started the inventory search by going to the front passenger compartment, where he saw a blanket covering a bulky item.  When Haas lifted the blanket, he was a basket and a clear baking dish that had a white powdery residue along the rim.  Haas then looked inside the day pack into which Franklin had placed the car stereo and saw a plastic beverage bottle taped up with black tape and a clear glass jar with what appeared to be methamphetamine in it.  Haas looked up to see if Franklin was still standing nearby and but did not see him.  Haas asked the tow truck driver if he knew where Franklin was, and the driver said that Franklin had started walking down the road.  Haas went to look for Franklin, but he could not see Franklin anywhere alongside the road.  Haas then stopped conducting the inventory search to apply for a search warrant, which the state of Alaska granted.

# ARGUMENT

## I. NO LEGITIMATE EXPECTATION OF PRIVACY

Before a person can complain that law enforcement violated his Fourth Amendment rights, that person must first establish that he had a legitimate expectation of privacy in the place or thing law enforcement searched or seized. *Rakas v. Illinois*, 439 U.S. 128(1978);. A search of a third party's property in which the defendant had no legitimate expectation of privacy does not affect the defendant's Fourth Amendment rights even if the government seeks to use the fruits of the search against the defendant. *United States v. Pulliam*, 405 F.3d 782 (9th Cir. 2005). A person who is in sole possession of an automobile that does not belong to him at the time of a law enforcement stop, may however have a legitimate expectation of privacy in the automobile if he can establish that the true owner of the automobile has given him permission to drive it. *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980). It order to fulfill his initial burden of establishing a legitimate expectation of privacy in the place or thing searched, the defendant must have exhibited an actual, subjective expectation of privacy in the place or thing, and that society is prepared to accept that expectation as reasonable and legitimate. *United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir. 1986).

In this matter, Franklin has failed to submit any evidence supporting a finding that he had a legitimate expectation of privacy in the BMW or its contents on August 26, 2005. By his own statements, Franklin admitted the BMW did not belong to him. He has submitted no proof that the true owner of the BMW gave him permission to use the automobile while he ran errands. On its face, he had no more legitimate expectation of privacy in-- let alone legitimate control of--the BMW than any person who may have stolen it. Even if "Kendall Reed" had allowed him the use fo the BMW to run errands, that limited use ended when Haas impounded the BMW for not having a lawful license plate or insurance. Despite Haas giving Franklin two opportunities to remove anything of value from the BMW, Franklin took nothing from it. He left the basket and the day pack behind. By his actions, Franklin disclaimed any interest in, and thereby disavowed any expectation of privacy in, either the basket or the day pack that were in Kendall Reed's BMW. *See United States v. Stephens*, 206 F.3d 914, 917 (9th Cir. 2000).

Because of this Franklin's failure to establish a legitimate expectation of privacy in the basket or the day pack, the court should deny Franklin's motion.

II. LAWFUL INVENTORY SEARCH

Franklin has not challenged the lawfulness of the BMW's impoundment for having a false license plate on it or for the lack of insurance coverage. Instead, he

argues that under Alaska law, the inventory search exceeded it lawful scope.

In a series of decisions, the Untied States Supreme Court has set out the boundaries of a permissible inventory search, that is one that respects the interests the Fourth Amendment was intended to protect. These decisions are *South Dakota v. Opperman*, 428 U.S. 364 (1976); *Colorado v. Bertine*, 479 U.S. 367 (1987), and *Florida v. Wells*, 495 U.S. 1 (1990). In sum, based on this series of decisions, the Court has held that, pursuant to department policies, law enforcement officers may conduct an inventory of the contents of an automobile, which is subject to being law fully impounded , for the purpose of securing either the automobile or its contents to protect against loss or claims of property loss or threats to officer safety. During such inventory searches, the searching officer may open closed containers.   *Bertine* 479 U.S. at 369.

Haas conducted the inventory search pursuant to department policy that requires the officer to inventory any item of obvious value. When Haas informed Franklin that he would be impounding the vehicle and that Franklin should take anything of value with him, Haas saw Franklin place a car stereo into the day pack. Franklin left the day pack in the car when he left. Based on this, it was appropriate for Haas to open the day pack to inventory the car stereo. Once he opened the day pack, he saw items in plain view that appeared to be contraband. At that point,

Haas stopped doing an inventory search and applied for the warrant. The evidence is not therefore subject to suppression. The court should deny the motion in its entirety.

RESPECTFULLY SUBMITTED this day, March 21, 2006, in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/Stephan A. Collins
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: stephan.collins@usdoj.gov
AK # 8911061

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2006
a copy of the foregoing was served
electronically:

Mike Dieni
Asst. Federal Public Defender
550 W. 7th Ave., #1600
Anchorage, AK 99501

s/ Stephan A. Collins