UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>JERRY B. FRANKLIN, JR.,<br><br>        Defendant. | 3:06-cr-00008-JWS-JDR<br><br>**RECOMMENDATION<br>REGARDING MOTION TO<br>SUPPRESS**<br><br>(Docket Entry 16) |

Defendant Jerry Franklin moves to suppress evidence obtained as a result of the August 26, 2005 traffic stop of a BMW that Franklin was driving, as well as the warrantless search of the vehicle and the fruits of the alleged illegal warrantless search used to support the application for a search warrant of the vehicle. Docket entry 16. The motion is opposed by the government. Docket entry 26. For reasons stated below, I recommend that the motion to suppress be denied, and that the court adopt findings of fact and conclusions of law set forth below.

## Factual Findings

On August 26, 2005, Jerry B. Franklin, Jr., was driving a maroon BMW with Alaska license CSB 804. Franklin had borrowed the vehicle from a friend, Kendall Reed, who had told Franklin he had purchased the vehicle earlier that summer.

While on duty, Anchorage police officer Steve Haas was patrolling in the Spenard mid-town area of Anchorage about 9:50 a.m. when he observed the two-door maroon BMW vehicle. The officer was stopped in another lane of traffic at the time. His attention was drawn to that vehicle because he had recently investigated a similar looking BMW for not having a license plate. While sitting in his patrol car, he ran a computer search of the CSB 804 license plate which came back as a plate for a red Dodge minivan. Officer Haas decided to stop the BMW and make inquiry about the misuse of a license plate. He activated a traffic stop and the BMW pulled over in the parking lot of a Holiday Inn. The driver of the BMW later identified as Franklin walked back to the police vehicle. Officer Haas told him to return to his vehicle, which he did. At the time Haas was in uniform.

The officer approached the vehicle and Franklin displayed a driver's license, but he had no proof of registration or insurance to show the officer. Officer Haas asked Franklin where the registration was and Franklin responded that the vehicle was not his. Franklin appeared to make some attempt to locate the

registration but did not produce one.  The officer inquired about insurance and Franklin said he did not know anything about that.  He told the officer he had borrowed the vehicle from Kendall Reed and added that "they" had bought vehicles in the past at auctions.

Officer Haas ran the vehicle identification and learned that the vehicle had originally been registered to a Lawrence and Jeanette Dinneon and that the registration had expired in November 2003.  The officer returned to his vehicle to write citations for misuse of license plates, expired registration, and no proof of registration or insurance.  Meanwhile, Franklin was talking on a cell phone.  Officer Haas approached Franklin to provide him notice of intent of the impoundment of the vehicle.  The officer told Franklin that he needed the car key and for Franklin to retrieve anything he needed out of the vehicle.  Franklin mentioned a speaker and the officer observed him place a car stereo in a backpack in the car.  The officer handed Franklin some paperwork and Franklin continued to make a phone call.  Franklin asked the officer if he could get out of the vehicle and the officer responded he could.  Franklin then began walking south away from the vehicle.

Officer Haas observed on the passenger side of the BMW a protruding wicker basket and a backpack.  He looked to see if there was anything else of value inside the vehicle to note in his impound report.  The wicker basket on the floorboard was partially covered with a blanket and he moved the blanket aside to see if there

was anything else of value inside.  After doing so, he observed a clear Pyrex dish containing a white residue.  The officer thought that the residue could be connected to methamphetamine.  Officer Haas also observed a white box, exh. C, which he could see contained vials, but he did not pull them out.

The backpack was located on the passenger seat.  The officer had observed Franklin place a car stereo inside the pack.  He did not know if there was anything else of value inside.  He opened the top of the pack and observed a Gatorade bottle with the top taped shut.  The bottle was consistent with paraphernalia used to transport methamphetamine. The officer immediately stopped searching because he suspected at that point that a meth lab might be inside the vehicle.  Franklin was nowhere in sight.

The officer asked the tow truck driver if he had seen which way Franklin went. The officer contacted dispatch and two APD officers responded. Officer Haas left the scene before the tow truck left with the BMW.  Officer Haas applied for a search warrant which was issued by State magistrate Suzanne Cole.  Other officers executed the search warrant. The State search warrant was issued to search the vehicle for drugs and drug paraphernalia.

The backpack contained a car stereo, a Gatorade bottle inside a plastic bucket, and a glass jar that looked like it contained methamphetamine. Officer Haas had prior experience as an officer in investigating methamphetamine cases.  He did

not field-test the white substance on the Pyrex dish before seeking a search warrant, but the substance looked to him like crystal meth. The officer knew that meth ingredients can be under pressure and he had previously seen a taped bottle used in meth production. He was concerned about officer safety with respect to the contents of the vehicle. He noted in his impound report, exh. A, that the vehicle might contain a "meth lab." APD alerted Rusty's Towing and Recovery Service which is used by the police when an impounded vehicle may contain evidence of a crime.

      The name "Reed" meant something to Officer Haas from a prior case. The officer did not try to telephone Reed, but based on Franklin's statements the officer believed that there was no insurance on the vehicle. The officer knew that a new owner of a vehicle has thirty days to transfer title. According to DMV, the vehicle was not registered to anyone and had been junked since 2003. At least twice the officer told Franklin he could take what he wanted from the car before he departed. The officer's impound report was prepared at the scene by Officer Haas using the computer in his vehicle. After finding what he suspected might be a meth lab, Officer Haas changed the focus of his impound report to reflect that the vehicle might be evidence of a crime involving meth. The officer noted the car stereo in his police report. The fact of the presence of the car stereo became less important to the officer because of the suspected meth paraphernalia so he did not list the car

stereo in his impound report. The officer removed nothing from the vehicle during his on-scene inventory.

While looking for items of value, the officer lifted the blanket and saw the Pyrex dish containing the powdery residue. I accept the officer's statements that he was not looking for violations of the drug laws, but rather items of value in reference to the vehicular impound. There is no way the officer could tell whether the backpack contained anything of value or whether the stereo which he had observed Franklin place in the pack was an item of value without looking in the pack.

## Discussion

### A. Standing

The government challenges Franklin's standing to seek suppression of the evidence seized from the vehicle. Franklin asserts a possessory interest in the automobile and an ownership interest in the backpack and wicker basket. Therefore, he possesses an expectation of privacy in those items which the Fourth Amendment was designed to protect. The evidence is undisputed that Franklin had permission of Reed to use the vehicle, and I rely on that fact for purposes of the motion to suppress.

The government claims that Franklin voluntarily abandoned the backpack and wicker basket and its contents when he declined to take them with him when he walked away from the vehicle that was going to be impounded by the

police.  Abandonment is a question of intent.  <u>United States v. Nordling</u>, 804 F.2d 1466, 1469 (9th Cir. 1986).  The officer did not tell Franklin that unless he removed the items from the vehicle, those items would be forfeited to the State.  Franklin had no immediate means of transportation, and I consider that the officer gave him a choice of whether to take the items with him or not.  Leaving the items in the vehicle was not tantamount to the relinquishment of any claim of ownership or future right to possess the articles.

Franklin argues that the evidence seized from the BMW was the product of an unlawful stop and impoundment of the vehicle, and thus his unlawful detention as the driver.  To challenge the stop of the vehicle on Fourth Amendment grounds, Franklin must have had a reasonable expectation of privacy in the BMW.  <u>United States v. Dorais</u>, 241 F.3d 1124, 1128 (9th Cir. 2001).  I conclude that Franklin had a reasonable expectation of privacy in the motor vehicle that he occupied at the time of the traffic stop, as well as that he had a reasonable expectation of privacy in the items seized from the vehicle.

B.  The Vehicle Stop

Officer Haas stopped the BMW for a possible violation of Alaska law that proscribes misuse of license plates.  I conclude that the facts taken together support the officer's conclusion that he had probable cause to stop the vehicle on that ground.  The officer's questions went directly to concerns of a lawful traffic stop,

mainly production of a driver's license, registration and proof of insurance. Franklin was unable to provide proof of registration or insurance. The officer had authority to impound the vehicle for misuse of plates in violation of Anchorage Municipal Code (AMC) 9.52.010. *See*, the municipal operating procedures, 3.04.010 B.1.b. A copy of the operational procedures is found at exh. J.

### C. Inspection of Personal Property Inside the Vehicle

The policy associated with the authority to impound vehicles describes as its purpose the protection of property, whether seized as evidence or not, and to protect the public. The policy permits the officer to protect personal property which is vulnerable to theft, vandalism or other loss. Officer Haas provided Franklin the opportunity to remove the items in question from his vehicle and to walk away. Franklin chose not to do so. Once a tow truck is called for a police impound, the officer had an obligation to conduct an inventory for "obvious articles of value, and note same on the impound report." Policies and Procedures 3.04.010 B.1.c.(3) provides that whenever a person is arrested for driving while intoxicated, personal property which is in plain view inside the vehicle, and is determined to be valuable by the arresting officer, or by the defendant, must be taken for safe keeping and noted in the official report. I take guidance from this policy with respect to vehicles that are impounded as potential evidence of a crime other than driving while intoxicated.

Franklin complains that Officer Haas searched the backpack and basket, rather than merely noting those items as inventory without looking inside them. Under the circumstances of this case, where the officer observed Franklin place a car stereo in the backpack, and the officer observed an empty space in the vehicle where a stereo would go, and Franklin did not take the backpack with him, these facts gave rise to a reasonable concern by the officer for both officer safety and accountability of personal property. It was reasonable for the officer to look in the basket to determine whether there were any articles of value; Franklin does not claim that the basket, itself, had intrinsic value. Once the officer saw the plate with suspected meth residue, he turned his attention to the backpack. Because the officer had seen Franklin handle the backpack and place an item in it, it was reasonable for him to look inside the backpack. The evidence confirms that the officer was indeed performing an inventory search. The officer was aware of, and I believe respected, the limitations on an inventory search so that it did not turn into a general search for evidence of a crime. The officer did not search the entire contents of the basket or backpack.

The reasons for conducting an inventory search are set forth in <u>Florida v. Wells</u>, 495 U.S. 1 (1990) as follows: (1) the protection of the vehicle owner's property; (2) the protection of the police against claims by the owner; and (3) the protection of the police from potential danger. *Id.* The inventory search was carried

out consistent with the standard procedure of the Anchorage Police Department. The officer obtained a search warrant for a search of the entire contents of the automobile. The government does not rely upon an inventory search for the items seized pursuant to the search warrant.

Officer Haas' search of the inside of the backpack and the covered wicker basket were not made incident to any lawful arrest of Franklin. Franklin had left the scene with the officer's permission prior to the officer's search. The government does not argue that Officer Haas initially had probable cause to search for evidence of a crime inside the backpack or basket, nor do they claim that the officer searched those items for that reason. Prior to the search of either of these items there had been no reason for the officer to associate the vehicle or its contents with a drug crime.

"Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 373 (1987). The Unites States Supreme Court in South Dakota v. Opperman, 428 U.S. 364 (1976) discussed federal constitutional limitations on inventory searches of motor vehicles which had been impounded by the police. Opperman's car had been illegally parked in a restricted zone and eventually was towed to a city impound lot. A police officer saw in plain view inside the car a watch and various other items of personal property. The door to the impounded vehicle was unlocked at the direction

of the officer, and he inventoried the contents of the car including the contents of an unlocked glove compartment.  A plastic bag of marijuana was found in the glove compartment.  The marijuana was seized and led to the arrest of Opperman when he appeared at the police station to reclaim his property.  The Supreme Court reasoned that there is a lesser expectation of privacy in an automobile that is subject to continuing and pervasive governmental regulation, including registration and inspection, and noted the mobility of the vehicle.  The high court found that the conduct of the police was not unreasonable under the Fourth Amendment.

The Supreme Court of Alaska has held that Art. 1 §14 of the Alaska Constitution contains a broader guarantee against unreasonable searches and seizures than is found in the federal counterpart.  *See*, Woods & Rohde, Inc. v. State Dep't. of Labor, 565 P.2d 138 (Alaska 1977).  The Alaska Supreme Court in State v. Daniel, 589 P.2d 408 (Alaska 1979) held that a warrantless inventory search of a closed, locked or sealed luggage, container or package contained within a vehicle is unreasonable and thus an unconstitutional search under the Alaska Constitution. 589 P.2d at 417-18.  In this federal prosecution the court is not limited by the Alaska Supreme Court's more narrow holding based upon Alaska State law.

In United States v. Pace, 898 F.2d 1218, 1243 (7th Cir.), *cert. denied*, 497 U.S. 1030 (1990), the court upheld an inventory search where police "leaf[ed] through the pages of . . . record books . . . to determine whether any items, such as

credit cards, might be stuck between the pages." The court concluded that the inventory was conducted pursuant to police procedure and was "analogous to inventorying a closed container in Bertine." *Id.* Other appellate courts have allowed inspection of items to ensure that there was nothing of value hidden. *See*, i.e., United States v. Khoury, 901 F.2d 948, 959-60 (11th Cir.), *modified on other grounds*, 910 F.2d 713 (11th Cir. 1990) (inspection of notebook); United States v. Andrews, 22 F.3d 1328, 1335 (5th Cir. 1994) (opening a notebook to determine whether there was any cash, credit cards, negotiable instruments or other items of value hidden between the pages). *Cf.* D'Antorio v. State, 926 P.2d 1158 (Alaska 1996) (determining that an officer did not exceed the permissible scope under federal or Ohio State law of inventory search of credit cards taken from the defendant's vehicle in accordance with department procedures).

The U.S. Supreme Court's opinion in Colorado v. Bertine, 479 U.S. 367 (1987) describes the principles governing inventory searches of automobiles and a driver's personal effects as set forth in South Dakota v. Opperman, *supra*, and Illinois v. Lafayette, 462 U.S. 640 (1983) rather than those governing searches of closed trunks and suitcases conducted solely for the purposes of investigating criminal conduct as set forth in United States v. Chadwick, 433 U.S. 1 (1977) and Arkansas v. Sanders, 442 U.S. 753 (1979). The court held that the policies behind a warrant requirement and the related concept of probable cause are not implicated

in an inventory search which serves the strong governmental interest in protecting an owner's property while it is in police custody and ensuring against claims of loss, stolen or vandalized property, and guarding the police from danger.

### Conclusion

The traffic stop of the BMW by officer Haas was lawful. Officer Haas' conduct in looking in the backpack and the basket complied with standard caretaking procedures for taking personal property inside the vehicle for safekeeping once the vehicle was subject to being impounded. The items sought to be suppressed would have been discovered during a lawful impound. The issuance of the state search warrant was not predicated on a violation of the Fourth Amendment to the U.S. Constitution. Wherefore, the motion to suppress lacks merit. It should be denied. IT IS SO RECOMMENDED.

DATED this 3rd day of April, 2006, at Anchorage, Alaska.

    /s/ John D. Roberts  
JOHN D. ROBERTS  
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON April 13, 2006**, to object to a magistrate judge's findings of fact

may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON April 19, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).